ANDREW LANGDON, SUMNER W. WHITE AND CHARLES R. HENEAGE, COMPOSING THE FIRM OF ANDREW LANGDON & CO., APPELLANTS, v. THE NEW YORK, LAKE ERIE AND WESTERN RAILROAD COMPANY, RESPONDENT.

*Common carrier — discrimination in its rates between different customers — a complaint, based upon a penal statute of another state, will not be sustained in the State of New York — common-law right.*

In an action brought against a common carrier by a shipper of merchandise, it was alleged in the complaint that the common carrier had allowed other shippers certain concessions and draw-backs upon the public rates or prices fixed by it for transportation of merchandise over its lines, which it had failed and refused to allow to the plaintiffs, and that by reason thereof the rates demanded and received by the defendant from the plaintiffs exceeded the rates charged to other parties for like services. It further alleged that these discriminations were made under, controlled by and were in violation of the act of the State of Pennsylvania, through which the defendant's line extended, declaring "that any undue or unreasonable discrimination by any railroad company or other common carrier * * * is hereby declared to be unlawful," and further providing " nor shall any such railroad company or common carrier make any undue or unreasonable

discrimination between individuals or between individuals and transportation companies in the furnishing of facilities for transportation. Any violation of this provision shall make the offending company or common carrier liable to the party injured for damages treble the amount of injury suffered."

For a second cause of action the complaint alleged that the defendant furnished cars to other companies suitable for receiving their merchandise, whereas they required the plaintiffs, at their own expense, to furnish lumber for and do the work of fitting up the cars in a suitable condition to carry their merchandise, and thereby discriminated to the extent of one dollar for each car against the plaintiffs, and then repeated the allegations in reference to the statute of the State of Pennsylvania.

For the third cause of action the complaint alleged that the defendant discriminated against the plaintiffs, when its cars were insufficient to carry all the merchandise offered, in the apportionment of its cars between the plaintiffs and other shippers, to the plaintiffs' damage, and again repeated the reference to the statute of the State of Pennsylvania.

In each count the complaint claimed to recover, for damages, treble the amount of the injuries suffered by the plaintiffs in the premises.

Upon the hearing of a demurrer interposed to this complaint on the ground that the complaint did not state facts sufficient to constitute a cause of action, and of the absence of jurisdiction of the courts of the State of New York over the subject-matter of the action:

*Held*, that the object of the action being to bring the case within the statute of the State of Pennsylvania, and the remedy afforded by that statute being penal in its nature, that the action thereunder was not maintainable in the courts of the State of New York, as such courts would not enforce the penal laws of another State.

That a statute enacted for the purpose of providing a punishment, as distinguished from one affording an indemnity, is penal in its nature.

*Semble*, that while an action would lie at common law against a common carrier for withholding from a shipper of merchandise the equality of right which such shipper is entitled to enjoy with other patrons of the common carrier, yet a complaint which restricts the character of the action to a recovery under a particular statute of another State, which provides a penalty for such action on the part of the common carrier, will not justify a recovery of the damages to which the common carrier would be liable at common law for such discrimination between shippers upon its line.

Appeal by the plaintiffs from an interlocutory judgment of the Supreme Court sustaining the defendant's demurrer, interposed to the complaint in the above-entitled action, and entered in the office of the clerk of the county of New York on the 11th day of February, 1890.

The action was brought to recover damages for the alleged discriminations exercised by the defendant in the transportation of coal over its line, as between the plaintiffs and certain other shippers of coal upon the defendant's railroad. To the complaint in this action the defendant interposed a demurrer on the ground, first, that the court had no jurisdiction of the subject-matter of the action; and, second, that the complaint did not state facts sufficient to constitute a cause of action.

*Benjamin S. Harmon,* for the appellants.

*Benjamin H. Bristow* and *Charles Steele,* for the respondent.

DANIELS, J.:

It appears from the complaint that the plaintiffs, as copartners, were miners, shippers and dealers in coal from the 1st of May, 1885, until September, 1889, when this action was commenced. The mines from which their coal was obtained were located in the region of the Carbondale, Lackawanna and Wyoming anthracite coal fields, in the State of Pennsylvania. During the same time it is also alleged the defendant was and continues to be a corporation created under the laws of the State of New York, and engaged as a common carrier in the transportation of passengers and freight over its different lines, and those controlled by it, including a main line from Jersey City, in the State of New Jersey, to Buffalo and Dunkirk, in the State of New York, and a branch line from Carbondale, in the State of Pennsylvania, to a junction with the main line at Susquehanna in that State. It is also alleged that the plaintiffs' business in part consisted in shipping their coal for sale to the markets north-east and west, reached by the defendant's lines, and that the defendant's lines of railway and its connections supplied the only means of shipment for the plaintiffs' coal to these markets. It is then stated that the Delaware and Hudson Canal Company and the Hillside Coal and Iron Company, two other corporations, were mining coal in the same region during the same time and shipping it to the same general markets and by the same route as that employed and those reached by the plaintiffs. And that the Delaware and Hudson Canal Company mined and carried coal from its own collieries in the same region, and shipped the same over the

lines of road under its ownership and control, and as a common carrier. And that the other company was a nominal organization, devised and maintained by the defendant to provide the means, without detection, of exercising unjust and unlawful discriminations against the plaintiffs and other individual coal operators.

The plaintiffs then aver that during this period of time they mined, or bought at the mines in the region which has been mentioned, 778,753 tons, more or less, of anthracite coal and shipped it over the lines of the defendant from Carbondale to the markets north, east and west reached by the defendant's lines and connections previously mentioned. That during these times the defendant, directly or indirectly, allowed to these other companies certain concessions and draw-backs upon the public rates or prices fixed by it for the transportation of anthracite coal over its lines, which it failed and refused to allow to the plaintiffs, and by reason thereof the rates and sums demanded and received by the defendant from the plaintiffs for the transportation of their coal exceeded the rates or sums charged, demanded and received by it from these other companies for the like service from the same place, upon like conditions, and under similar circumstances, to the amount of sixty cents a ton upon all the anthracite coal shipped over the defendant's lines during the time which has been mentioned, whereby they have been injured and damaged in the sum of $506,189.45. It is then added that these discriminations were made under, controlled by, and in violation of an act of the State of Pennsylvania, approved on the 4th of June, 1883, providing as follows:

" Section 1. That any undue or unreasonable discrimination by any railroad company or other common carrier, or any officer, superintendent, manager or agent thereof, in charges for or in facilities for transportation of freight within this State, or coming from or going to any other State, is hereby declared to be unlawful.

" Section 2. No railroad company or other common carrier engaged in the transportation of property, shall charge, demand or receive from any person, company or corporation, for the transportation of property or for any other service, a greater sum than it shall charge or receive from any other person, company or corporation for a like service, from the same place, upon like conditions and under similar circumstances, and all concessions in rates and draw-

backs shall be allowed to all persons, companies or corporations alike, for such transportations and service, upon like conditions, and under similar circumstances and during the same period of time. Nor shall any such railroad company or common carrier make any undue or unreasonable discrimination between individuals or between individuals and transportation companies, in the furnishing of facilities for transportation. Any violation of this provision shall make the offending company or common carrier liable to the party injured for damages treble the amount of injury suffered."

And concluding that by reason of the premises the defendant had become liable to the plaintiffs for damages treble the amount of the injuries suffered by them, being the sum of $1,518,588.35.

The second cause of action is alleged to have arisen under the same attendant facts by furnishing box and stock cars, for the shipment of the plaintiff's coal, which they were obliged, at their own expense, to furnish lumber for, and do work in fitting and cleaning and putting them in a suitable condition to carry their coal, while the defendant furnished the cars to these other companies and shippers without expense to them in the condition suitable for receiving their coal, and thereby discriminated to the extent of one dollar for each car, amounting to $26,381 against the plaintiffs. The allegations before made concerning the statute of Pennsylvania are then repeated, followed by the averment that the defendant, by this discrimination, had become liable to the plaintiffs for damages treble the amount of the injuries suffered, and being the sum of $79,143.

A third cause of action is presented by a reiteration of the same introductory facts, caused by a violation of the defendant's duty in the apportionment of its cars between the plaintiffs and these other shippers, when its cars were deficient in number to take all the coal offered for transportation, by themselves and these two other shippers, and by giving preference to the latter. By this discrimination it is alleged that the plaintiffs were obliged to close their mines, or run them on reduced time, thereby increasing the cost of the production of their coal to the extent of twenty cents a ton upon all the anthracite coal mined at the collieries and shipped over the defendant's lines, and causing injury and damage to the plaintiffs amounting to $155,750.60. The same references are then made to the statute

and the same liability for treble damages repeated which are stated at the sum for this cause of $467,251.80.

Like causes of action are in the same form set forth and alleged to have accrued to the plaintiff Andrew Langdon, between the 1st of August, 1883, and the 1st of May, 1885, for which treble damages are stated to have accrued in his favor, and to have been assigned by him to the plaintiffs. And for all the damages at this rate accruing the judgment has been demanded.

The defendant demurred to this complaint, assigning as causes of demurrer, the failure to state facts presenting a cause of action, and the absence of jurisdiction of this court over the action.

The object of the complaint throughout has been to place the case made within the statute of the State of Pennsylvania. That intention is disclosed by closely following the verbiage of the act, in stating the obligations created and the wrongs suffered from the acts of the defendant by the plaintiffs and their assignor. Important facts, it is true, are alleged, which would form material grounds for an action at common law for withholding from the plaintiffs and the assignor that equality of right which they were entitled to enjoy with these other patrons of the defendant. But these facts have not been set forth to present any cause of action for damages suffered by the violation of that common-law equality, but as essential, and only so far as they are essential, to place the case within the restraints and remedies of this statute. The concessions and rebates which were given to the other shippers and denied to the plaintiffs and the assignor, the obligation to clean the cars and the work of putting them in a suitable condition for the carriage of coal before they could be used, and the omission and failure to allot to them their fair proportion of cars, when the supply was deficient, are all brought forward in such language as to directly apply the statute and to entitle the plaintiffs to its own express measure of relief. Not only that, but the express averment has been made as to each cause of complaint, that it arose from an undue and unreasonable discrimination, made under and controlled by, and in violation of this statute of the State of Pennsylvania; no plainer or more distinct effort could be made than has been in this instance to place the right of recovery wholly within and upon the statute. And that has led to the omission of other and different

averments of facts required for the creation of a right of action at common law.

That causes of action within the statute have been alleged is reasonably free from all ground of controversy. But that alone, while it would maintain the action in the State of Pennsylvania, will not entitle the plaintiffs to succeed in the courts of this State, if the redress prescribed by the statute must be held to be penal in its nature, for the principle seems to be quite well settled that the courts of one State will not enforce the penal laws of another State. Upon the existence of this principle there is no disagreement in the authorities. But numerous disagreements have arisen in the definition of what are to be regarded or held to be penalties.

In this State the liability created by statute for the payment of a debt not owing by the defendant, but for the omission of an act or report required from him as a corporate officer, has uniformly been held to be a penalty. (*Merchants' Bk.* v. *Bliss,* 35 N. Y., 412; *Rector, etc.,* v. *Vanderbilt,* 98 id., 170; *Gadsden* v. *Woodward,* 103 id., 242; *Whitaker* v. *Masterton,* 106 id., 277; *Roediger* v. *Simmons,* 14 Abb. [N. S.], 256.) And this construction of the law has also been maintained in other States. (*Lebanon Bank* v. *Karmany,* 98 Penn., 65, 75; *Halsey* v. *McLean,* 12 Allen, 438; *Breitung* v. *Lindauer,* 37 Mich., 217; *Steam Engine Co.* v. *Hubbard,* 101 U. S., 188.) As to this being the effect of the law, the decided cases are quite uniform. But they are not so much so upon the question of the enforcement of the liability in the courts of another State than that by whose laws it has been created. The propriety of the rule, so far as it has been adopted, has been partially, at least, conceded, owing to the circumstance that no preceding liability existed in these cases against the defendant for the debt or demand itself. But that which the statute declared was wholly by way of punishment for the violation or neglect of a statutory duty. But while this has been a fundamental fact in that class of cases the same principle has also been applied to the redress of an injury to the rights of the party entitled to recover enhanced damages or amounts on account of a wrong suffered by himself. In *Blaine* v. *Curtis* (59 Vt., 120), the principle was applied to an action for the recovery of three times the excess of usurious interest reserved and taken in the State of New Hampshire, in violation of a statute of that State, and which was held

incapable of being maintained in the State of Vermont. In *New-comb* v. *Butterfield* (8 Johns., 343), it was held to include treble damages for a trespass on public lands; and in *Strong* v. *Stebbins* (5 Cow., 210; *Warren* v. *Doolittle*, id., 678), to be applicable to a person assisting in the removal of a tenant's property from demised premises, depriving the landlord of his distress for non-payment of rent. And *Cohn* v. *Neeves* (40 Wis., 393) conforms to this rule.

Copious references have been made in the brief of the plaintiffs' counsel to other cases bearing on this part of the present controversy. And they are far from being uniform in the application of the principle, as will be seen from *United States* v. *Chouteau* (102 U. S., 603); *Reed* v. *Northfield* (13 Pick., 94); *Le Forest* v. *Tolman* (117 Mass., 109); *Quimby* v. *Carter* (20 Me., 218); *Stockwell* v. *United States* (13 Wall., 531).

In this diversity of judgment the only safe and sure criterion is that of the scope and language of the statute itself. If it has been so enacted as to provide a punishment, as distinguished from an indemnity, then it should certainly be held to impose a penalty. This statute has been so framed as to regulate the entire subject included in the action. It has declared the acts complained of to be unlawful, and the consequences which will follow their performance. It has not provided for any recovery of mere damages for its violation, but a gross sum has been prescribed as the amount of the recovery. It is indivisible, except in ascertaining the amount, which is to be treble the sum of the actual injury or damage. The utmost extent to which the courts have gone in distinguishing between an indemnity and a punishment fails to include this act. For its object is to prescribe punishment for the violation of its provisions. And it is no less a punishment by reason of the fact that the amounts which are payable are to be recovered by the injured party. By the complaint a case has been stated requiring this punishment to be imposed, and nothing less than that has been demanded by the plaintiffs. It is the penalty, and that alone, which is designed to be enforced. That is the entire theory of the action, and it has in each subdivision of the complaint been prominently set forth as well as in the final demand made. And in this manner the action has been unmistakenly defined as one for the recovery of the penalties created

by the statute. To hold it to be otherwise would be a direct departure from the action as it has been framed and presented. And the cases of *Conaughty* v. *Nicholls* (42 N. Y., 83) and *Williams* v. *Freeman* (12 Civ. Pro., 334) do not sanction such a departure. But those of *Kelly* v. *Downing* (42 N. Y., 71), requiring special stress to be placed on the demand for judgment when a demurrer to the complaint has been served, and *Arnold* v. *Angell* (62 N. Y., 508), *Hollister* v. *Englehart* (11 Hun, 446) and *Grover* v. *Morris* (73 N. Y., 473, 479) maintain the principle that the theory of the action, as the pleadings disclose it, should ordinarily be followed. The plaintiffs themselves have given their action the restricted nature which it has as a suit for penalties. As such this court cannot entertain it, for the reason that it is to carry into effect the penal law of another State. (*Wisconsin* v. *Pelican Ins. Co.*, 127 U. S., 265 ; *Western T. and Co.* v. *Kilderhouse*, 87 N. Y., 435.) Indeed, this proposition has been practically conceded by the plaintiffs. That they have been seriously injured by the discriminations of the defendant, and are entitled to redress, is free from doubt as the facts now appear. But that redress must be sought through the courts of the State whose laws in this manner have been violated.

The judgment should be affirmed, with costs ; but, as the complaint may yet be amended so as to present causes of action at common law, the plaintiffs should be allowed to amend in twenty days on payment of the costs of the demurrer.

VAN BRUNT, P. J., and BRADY, J., concurred.

Judgment affirmed, with costs ; plaintiffs to be allowed to amend in twenty days on payment of costs.